IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| JOSE E. GONZALEZ, | ) | 4:14CV3089 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| SOUTH SIOUX CITY POLICE | ) | |
| DEPARTMENT, KIM WATSON, | ) | |
| ROBERT DECK, WILLIAM L. | ) | |
| BINKARD, SARAH M. | ) | |
| MEADOWS, DAKOTA COUNTY, | ) | |
| NEBRASKA, and SOUTH SIOUX | ) | |
| CITY, NEBRASKA, | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff Jose Gonzalez ("Plaintiff") filed his Complaint in this matter on May 1, 2014. (Filing No. 1.) This court has given Plaintiff leave to proceed in forma pauperis. (Filing No. 7.) The court now conducts an initial review of Plaintiff's Complaint to determine whether summary dismissal is appropriate under 28 U.S.C. §§ 1915(e)(2) and 1915A.

**I. SUMMARY OF COMPLAINT**

Plaintiff is presently confined in the Tecumseh State Prison in Tecumseh, Nebraska. He filed this action under the Alien Tort Statute ("ATS"), 28 U.S.C. § 1350.[1] Liberally construed, Plaintiff also asserts jurisdiction under 42 U.S.C. § 1983. Defendants include Dakota County, Nebraska ("Dakota County"); South

---

[1]The ATS provides that the "district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." 28 U.S.C. § 1350.

Sioux City, Nebraska; the South Sioux City Police Department; Kim Watson, the county attorney in Dakota County; Robert Deck, Plaintiff's court-appointed attorney; Judge William Binkard, a state district court judge in Dakota County; and Sarah Meadow, a deputy county attorney in Dakota County. (Filing No. 1 at CM/ECF pp. 2-3.)

Plaintiff alleges he is a Mexican national. He was arrested on October 31, 2008, by South Sioux City Police and was charged with first degree sexual assault. He was ultimately convicted and sentenced to prison. (*Id.* at CM/ECF p. 3.) He was held in the Dakota County Jail from October 31, 2008, until he was sentenced on June 29, 2009. (*Id.*)

Plaintiff states that at no time after his arrest was he advised by any of the named defendants of his right to consular notification under Article 36 of the Vienna Convention. (*Id.* at CM/ECF p. 4.) Plaintiff argues that, had the Mexican Consulate been notified, consular officials would have, among other things, "protected him from [] abuse by the judicial system." (*Id.* at CM/ECF p. 5.) For example, consular officials would have "secur[ed] his fellow employees' statements and testimony that Plaintiff was in fact at work when the alleged sexual abuses occurred." (*Id.* at CM/ECF p. 4.) Plaintiff alleges that his public defender, Robert Deck, was aware of his "obligation to notify Plaintiff of his rights under the Convention, but intentionally refused to do so." (*Id.* at CM/ECF p. 5.)

As relief, Plaintiff seeks general damages in the amount of $25,000,000.00; special damages "at an average of $1,000.00 per week, over the past six years"; and exemplary and punitive damages in the amount of $100,000,000.00. (*Id.* at CM/ECF p. 6.) He also seeks an order certifying a class of "all foreign nationals similarly situated," and requiring that the defendants "cease their current practice of seizing

foreign nationals without notifying them of their rights under the Vienna Convention."[2] (*Id.*)

## II. APPLICABLE LEGAL STANDARDS ON INITIAL REVIEW

The court is required to review prisoner and in forma pauperis complaints seeking relief against a governmental entity or an officer or employee of a governmental entity to determine whether summary dismissal is appropriate. *See* 28 U.S.C. §§ 1915(e) and 1915A. The court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A(b).

Pro se plaintiffs must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). However, "[a] pro se complaint must

---

[2]Plaintiff's request for injunctive relief is moot because the violation of the Vienna Convention of which Plaintiff complains has already occurred and there is no reason to believe Plaintiff will once again be arrested in Dakota County and subject to the same violation. In addition, as a pro se litigant, he may not represent the interests of other parties.

be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted).

Liberally construed, Plaintiff here alleges federal constitutional claims. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute and also must show that the alleged deprivation was caused by conduct of a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993).

### III.  DISCUSSION OF CLAIMS

**A.  Right to Consular Notification under the Vienna Convention**

Plaintiff alleges a right to consular notification under Article 36(1)(b) of the Vienna Convention on Consular Relations ("Vienna Convention"), April 24, 1963, 21 U.S.T. 77, T.I.A.S. No. 6820. "The Vienna Convention was drafted in 1963 with the purpose, evident in its preamble, of 'contribut[ing] to the development of friendly relations among nations, irrespective of their differing constitutional and social systems.'" *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 337 (2006) (quoting 21 U.S.T. at 79). Article 36 states in full:

> 1. With a view to facilitating the exercise of consular functions relating to nationals of the sending State:
> (a) consular officers shall be free to communicate with nationals of the sending State and to have access to them. Nationals of the sending State shall have the same freedom with respect to communication with and access to consular officers of the sending State;
> (b) *if he so requests, the competent authorities of the receiving State shall, without delay, inform the consular post of the sending*

> *State if, within its consular district, a national of that State is arrested or committed to prison or to custody pending trial or is detained in any other manner.* Any communication addressed to the consular post by the person arrested, in prison, custody or detention shall also be forwarded by the said authorities without delay. *The said authorities shall inform the person concerned without delay of his rights under this sub-paragraph*;
> (c) consular officers shall have the right to visit a national of the sending State who is in prison, custody or detention, to converse and correspond with him and to arrange for his legal representation. They shall also have the right to visit any national of the sending State who is in prison, custody or detention in their district in pursuance of a judgment. Nevertheless, consular officers shall refrain from taking action on behalf of a national who is in prison, custody or detention if he expressly opposes such action.
> 2. The rights referred to in paragraph 1 of this Article shall be exercised in conformity with the laws and regulations of the receiving State, subject to the proviso, however, that the said laws and regulations must enable full effect to be given to the purposes for which the rights accorded under this Article are intended.

21 U.S.T. at 101-02 (emphasis added).

Here, the court is concerned solely with the question of whether a detained alien may vindicate in an action for money damages the failure of the detaining authority to inform him of the availability of consular notification and access. The question of whether the Vienna Convention confers *any* rights that can be enforced in the federal courts has arisen both in the context of civil suits for damages and in the context of criminal trials and postconviction proceedings involving foreign nationals. There is a disagreement among the circuit courts on the question of whether the Vienna Convention establishes any judicially enforceable right of consultation between a detained foreign national and the consular representatives of his or her nation. *Compare* Mora v. New York, 524 F.3d 183, 196-97 (2d Cir. 2008) (holding detained alien may not vindicate in an action for damages the failure of the

detaining authority to inform him of the availability of consular notification and access); *Gandara v. Bennett*, 528 F.3d 823, 827-29 (11th Cir. 2008) (in civil action alleging violation of the consular notification provisions of the Vienna Convention, holding the Vienna Convention does not create private rights and remedies enforceable through § 1983); *Cornejo v. Cnty. of San Diego*, 504 F.3d 853, 855 (9th Cir. 2007) (concluding Article 36's obligation to inform aliens of their right to consular notification does not create judicially enforceable individual rights), *United States v. Emuegbunam*, 268 F.3d 377, 392 (6th Cir. 2001) (same), and *United States v. Jimenez-Nava*, 243 F.3d 192, 198 (5th Cir. 2001) (same), with *Jogi v. Voges*, 480 F.3d 822, 834-36 (7th Cir. 2007) (holding that "Article 36 confers individual rights on detained nationals" that can be vindicated in private action). The Eighth Circuit Court of Appeals has yet to decide whether the Vienna Convention creates an individually enforceable right to consular notification, whether a defendant must show prejudice to vindicate that right, if it exists, or what remedies are available for such a violation. *Viveros v. Hobbs*, No. 5:10CV00262 JMM/BD, 2011 WL 4072093, at *4 (E.D.Ark. Aug. 22, 2011) (citing *United States v. Santos*, 235 F.3d 1105, 1107-08 (8th Cir. 2000)).

At this point in the proceedings, the court finds Plaintiff has stated a plausible claim for relief against the city and county officials responsible for his arrest and detention. Accordingly, the court will allow Plaintiff's claims against Dakota County, Nebraska and South Sioux City, Nebraska, to proceed to service of process. The court cautions Plaintiff that this is only a preliminary determination based on the allegations set forth in the Complaint. This is not a determination of the merits of Plaintiff's claims or potential defenses thereto.

**B.     Fourteenth Amendment Violations**

To the extent Plaintiff seeks to recover damages for alleged violations of his rights to due process and equal protection under the Fourteenth Amendment (apart

6

from his claims for violations of the Vienna Convention), such claims are barred by *Heck v. Humphrey*. In *Heck*, the Supreme Court held a prisoner may not recover damages in a § 1983 suit where the judgment would necessarily imply the invalidity of his conviction, continued imprisonment, or sentence unless the conviction or sentence is reversed, expunged, or called into question by issuance of a writ of habeas corpus. *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994); *Schafer v. Moore*, 46 F.3d 43, 45 (8th Cir. 1995).

Here, Plaintiff does not allege that his conviction resulting from the 2008 arrest has been reversed, expunged, or called into question by issuance of a writ of habeas corpus. Accordingly, to the extent Plaintiff is attacking the validity of his criminal conviction or sentence, the claims are barred under *Heck* and must be dismissed without prejudice.[3] *See Schafer*, 46 F.3d at 45 (holding action barred by *Heck* should be dismissed without prejudice).

**C.    Judicial Immunity**

Plaintiff's claims against Judge Binkard are barred by judicial immunity. A judge is immune from suit, including suits brought under section 1983 to recover for alleged deprivation of civil rights, in all but two narrow sets of circumstances. *Schottel v. Young*, 687 F.3d 370, 373 (8th Cir. 2012). "First, a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial

---

[3]In *Sanchez-Llamas*, the Supreme Court held that a violation of any rights under Article 36 would not trigger application of the exclusionary rule. 548 U.S. at 348. Therefore, Plaintiff's action is not barred by *Heck* if he is *solely* challenging the defendants' failure to notify him of rights under Article 36 of the Vienna Convention. *See Taylor v. United States*, 399 Fed.Appx. 850 (4th Cir. 2010) (applying holding in *Sanchez-Llamas* and concluding *Heck* did not bar claims where convicted prisoner solely challenged failure of defendants to notify him of rights under Article 36 of the Vienna Convention); *Gandara*, 528 F.3d at 826 (same).

capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Id.* (internal citations omitted). An act is judicial if "it is one normally performed by a judge and if the complaining party is dealing with the judge in his judicial capacity." *Id.* (internal citations omitted).

Here, Plaintiff does not explain Judge Binkard's involvement in Plaintiff's criminal proceedings. However, the court takes judicial notice of the state court records contained in Plaintiff's habeas corpus proceedings that show Judge Binkard presided over state criminal proceedings following Plaintiff's 2008 arrest. (*See Gonzalez v. Houston*, No. 4:13CV03016 (D. Neb.), Filing No. 7-1 at CM/ECF pp. 18-19.) Here, Plaintiff alleges no facts against Judge Binkard that would fall outside the scope of his duties in presiding over Plaintiff's criminal proceedings. Accordingly, he is immune from suit.

### D.     Conspiracy and Prosecutorial Immunity

Plaintiff makes only conclusory allegations of conspiracy against Defendants that are insufficient to state a claim. Allegations of conspiracy must be pled with sufficient specificity and factual support to suggest a "meeting of the minds" *Manis v. Sterling*, 862 F.2d 679, 681 (8th Cir. 1988).

Here, Plaintiff alleges all Defendants "conspired with each other to violate Plaintiff's rights under the [Vienna] Convention." (Filing No. 1 at CM/ECF p. 4.) He also alleges all Defendants "established a practice of denying foreign nationals their rights under the [Vienna] Convention." (*Id.* at CM/ECF p. 5.) These wholly conclusory allegations are insufficient. Plaintiff offers no facts to support a claim that Defendants—including his public defender, the prosecuting authorities, and the judge who presided over Plaintiff's criminal trial—conspired to deprive Plaintiff of consular notification and access. Therefore, the court finds that Plaintiff failed to plead facts sufficient to state a conspiracy claim against Defendants.

Having failed to sufficiently allege a claim of conspiracy, Plaintiff's claims against Kim Watson and Sarah M. Meadows[4] are barred by prosecutorial immunity because Plaintiff alleges no facts against them that would fall outside of their duties in initiating and pursuing a criminal prosecution. *See Brodnicki v. City of Omaha*, 75 F.3d 1261, 1266 (8th Cir. 1996) ("Absolute immunity covers prosecutorial functions such as the initiation and pursuit of a criminal prosecution, the presentation of the state's case at trial, and other conduct that is intimately associated with the judicial process.").

IT IS THEREFORE ORDERED that:

1.  Plaintiff's claims against Kim Watson, Robert Deck, William Binkard, and Sarah Meadow are dismissed without prejudice.

2.  This matter may proceed to service of process against Dakota County, Nebraska, and South Sioux City, Nebraska, on the following issue only: whether a detained alien may vindicate in an action brought for money damages the failure of the detaining authority to inform him of the availability of consular notification and access.

3.  The Clerk of Court is directed to send to Plaintiff a copy of the Complaint, a copy of this Memorandum and Order, and two summons forms and two USM 285 Forms. Federal Rule of Civil Procedure 4(m) requires service of the complaint on a defendant within 120 days of filing the complaint. However, Plaintiff is granted, on the court's own motion, an extension of time until 120 days from the date of this Memorandum and Order to complete service of process.

---

[4]Watson and Meadows represented the State of Nebraska in state criminal proceedings following Plaintiff's 2008 arrest. (*See Gonzalez v. Houston*, No. 4:13CV03016 (D. Neb.), Filing No. 7-6 at CM/ECF p. 5.)

4.      If requested to do so in this matter, the United States Marshal will serve all process in this case without prepayment of fees from Plaintiff. In making such a request, Plaintiff must complete the USM 285 forms to be submitted to the Clerk with the completed summons forms. (See attached Notice.) Without these forms, the United States Marshal will not serve process.

5.      Upon receipt of the completed forms, the Clerk of Court will sign the summons forms and forward them to the Marshal for service on Defendants, together with copies of the Complaint.

6.      The Clerk is directed to set a pro se case management deadline in this case with the following text: May 8, 2015: Check for completion of service of summons.

DATED this 8th day of January, 2015.

BY THE COURT:

s/ Joseph F. Bataillon
United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.

**Notice Regarding Federal Rule of Civil Procedure 4**

Federal Rule of Civil Procedure 4 requires that a defendant be served with the complaint and a summons. This is to make sure that the party you are suing has notice of the lawsuit. Federal Rule of Civil Procedure 4(j)(2) governs service of process on municipalities. This rule provides, in relevant part:

> **(2) State or Local Government.** A state, a municipal corporation, or any other state-created governmental organization that is subject to suit must be served by:
>
> > (A) delivering a copy of the summons and of the complaint to its chief executive officer; or
> >
> > (B) serving a copy of each in the manner prescribed by that state's law for serving a summons or like process on such a defendant.

Fed. R. Civ. P. 4(j)(2). Nebraska state law provides that "[a]ny county, city, or village of this state may be served by personal, residence, certified mail, or designated delivery service upon the chief executive officer or clerk." Neb. Rev. Stat. § 25-510.02.

In this case, Rule 4(j) means that separate copies of the summons and complaint must be served on: (1) the chief executive officer or clerk of South Sioux City, Nebraska; and (2) the chief executive officer or clerk of Dakota County, Nebraska.

You may ask the United States Marshal to serve process, as described in the court's order, because you are proceeding in forma pauperis.